Robinson v. Baylor Health Care System

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-282-CV

JACK D. ROBINSON APPELLANT

V.

BAYLOR HEALTH CARE SYSTEM APPELLEES

AND BAYLOR ALL SAINTS 

MEDICAL CENTER 

------------

FROM THE 352ND DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

In five issues, appellant Jack D. Robinson appeals the trial court’s granting of appellees Baylor Health Care System and Baylor All Saints Medical Center’s motion for summary judgment in this case, which involves the termination of Robinson from his employment.  We affirm.

II.  Background

In the fall of 2001, Baylor Health Care System (“BCHS”) was in the process of acquiring All Saints Health System (“All Saints”).  This acquisition was to be effective January 1, 2002, leading to the creation of Baylor All Saints Medical Center (“Baylor All Saints”), an affiliate hospital under BCHS.  During this period, Robinson was the chief financial officer for All Saints and was to participate in the due diligence process and in the integration of the financial systems of All Saints and BCHS.  Robinson had been employed under an executive severance package since April of 2000 wherein, if terminated as a result of a merger between All Saints and another health provider, he would receive twelve months’ severance pay and other benefits. 

To ensure employee retention and continue enthusiastic support for the acquisition program, BCHS offered its Key Executive Protection Program to certain employees during the acquisition process.  It offered this program to Robinson through an offer letter from BCHS’s president and chief executive officer dated October 17, 2001.  Robinson was told that he was a “key executive” in the upcoming merger and “instrumental to our success as we move into the future together,” and that the purpose of the protection program was to “provide a level of protection to key executives for their continued contribution and loyalty to our organization.”  Further, in the event that the consolidation of functions resulted in the elimination of Robinson’s position as chief financial officer, BCHS would provide a severance benefit, which was defined as eighteen months of the base salary in effect at the time of termination, and other benefits.  On December 10, 2001, Robinson executed the Key Executive Agreement (“Agreement”) that was to be in effect during the “transition period” from January 1, 2002 to December 31, 2003.  Under the Agreement, should his position be eliminated during the transition period and a comparable one not offered, he would obtain specified severance benefits.  On the other hand, if he quit during the transition period, did not accept a comparable position, or was 
involuntarily terminated for any reason 
other than job elimination, then the benefits under the program would be forfeited. 

Robinson testified that he sought assurances that the involuntary-termination language was not included so that BCHS could just terminate someone for no reason and then not have to pay severance benefits.  Robinson understood that certain acts would require action but that the involuntary termination language would not be applied in an arbitrary manner.  However, he also understood he could not behave in just any way he wanted and not be subject to termination, and he admitted that no one told him that he could not be involuntarily terminated. 

In November 2001, prior to Robinson’s execution of the Agreement, BCHS offered Robinson a non-comparable position, which he declined.  Instead, he informed BCHS that he would be exercising his rights under the Agreement. He also testified that he told Patrick Flynn, his former boss at All Saints, that he would work for the first six months of the transition period and “then potentially elect the benefits under the program, unless something happened during that time where a different position might become available.”  On January 24, 2002, BCHS terminated Robinson.

In September 2000, Janice Whitmire, the All Saints Human Resource Director, had received complaints regarding an affair between Robinson and Lori Wright, one of Robinson’s subordinates, and concerning favoritism toward Wright demonstrated by Robinson.  In March 2001, Whitmire received a telephone call from Wright’s husband informing her that his wife was having an affair with Robinson.  Both Whitmire and Patrick Flynn, All Saints’s President and Chief Executive Officer, had counseling sessions with Robinson about the situation.  Additionally, beginning late 2001, members of the BCHS financial team had become concerned with Robinson’s commitment to the acquisition process.  Robinson also repeatedly attempted to have James Pool, BCHS’s Vice President and Corporate Controller, give Wright a retention bonus and severance package even though Pool told Robinson that Pool was not the decision maker regarding Wright and that Wright was not entitled to such benefits. 

Finally, in January 2002, Whitmire received a report that Robinson was seen kissing Wright in a parked car on Baylor All Saints’s premises.  Later that same month, Patrick Flynn and Venita McClellon-Allen, BCHS’s Senior Vice President of Human Resources, informed Robinson that he was being terminated for his inappropriate relationship with a co-employee and for creating obstacles to a smooth transition.  Flynn also speculated in a private meeting with Robinson that an additional reason for the termination might have been Robinson’s use of profanity in the work place.  There was no documentation or testimony by other employees or supervisors that Robinson was terminated to avoid paying him under the Agreement.

On May 23, 2003, Robinson filed his original petition against BCHS and Baylor All Saints, alleging causes of action for breach of contract, fraud, negligent misrepresentation, and age discrimination.  On August 29, 2004, the trial court granted the joint motion for summary judgment filed by BCHS and Baylor All Saints (together, “Baylor”) and sustained some of Baylor’s evidentiary objections.  This appeal resulted but does not include a complaint concerning the dismissal of the age discrimination claim.  It is Robinson’s position that he was terminated because his employer
(footnote: 2) did not want to pay him his severance package, while his employer’s position is that he was fired for having an adulterous affair with a subordinate even after counseling about the situation and for interfering in a smooth merger transition. 

III.  Standard of Review

When a party moves for summary judgment under both Rules 166a(c) and 166a(i), we will first review the trial court’s judgment under the standards of Rule 166a(i).  
Ford Motor Co. v. Ridgway, 
135 S.W.3d 598, 600 (Tex. 2004).  If Robinson failed to produce more than a scintilla of evidence under the Rule 166a(i) burden, then there is no need to analyze whether Baylor’s summary judgment proof satisfied the less stringent Rule 166a(c) burden.  
Id.
  

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense.  
Tex. R. Civ. P.
 166a(i).  The motion must specifically state the elements for which there is no evidence.  
Id.; Johnson v. Brewer & Pritchard, P.C., 
73 S.W.3d 193, 207 (Tex. 2002).  The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact.  
See
 
Tex. R. Civ. P.
 166a(i) & cmt.; 
S.W. Elec. Power Co. v. Grant, 
73 S.W.3d 211, 215 (Tex. 2002).

We review the evidence in the light most favorable to the party against whom the no evidence summary judgment was rendered.  
King Ranch, Inc. v. Chapman
, 118 S.W.3d 742, 751 (Tex. 2003), 
cert. denied
, 124 S. Ct. 2097 (2004); 
Johnson
, 73 S.W.3d at 197; 
Morgan v. Anthony
, 27 S.W.3d 928, 929 (Tex. 2000).  If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no evidence summary judgment is not proper.  
Moore v. K Mart Corp.
, 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied). 

IV.  Breach of Contract

Robinson’s first three issues pertain to his complaint that Baylor failed to establish as a matter of law that Robinson was not fired to avoid payment of severance benefits under the Agreement.  We will construe these first three issues as attacking the trial court’s grant of summary judgment against Robinson on his breach of contract claim.  As previously stated, we first review the trial court’s judgment under the standards of Rule 166a(i).  
Ford Motor Co.
, 135 S.W.3d at 600.  Under this review, Robinson’s breach of contract complaint misplaces the burden of proof.  As stated in Rule 166a(i), “[t]he court must grant the motion unless the respondent [Robinson] produces summary judgment evidence raising a genuine issue of material fact.”  
Tex. R. Civ. P.
 166a(i).  After reviewing the evidence, we conclude that Robinson has not carried this burden.

Robinson asserts that the termination language contained in the Agreement, “if you are involuntarily terminated by the Employer
 for any reason other than job elimination
, you will not be eligible for the Program payments or benefits described herein” has been interpreted by Baylor to establish a “just cause” standard for terminating his employment.  Robinson takes this position because Baylor affirmatively pleaded in Baylor’s first amended answer that “just cause existed for the actions taken with respects to [Robinson’s] employment.”  However, Baylor’s first amended answer does not specify the cause, or causes, of action to which such affirmative defense is applicable.  Robinson could have obtained such specificity by way of a special exception, but he did not.  Indeed, Baylor asserts that the “just cause” affirmative defense addressed the age discrimination claim, which Robinson has abandoned on appeal.  

We decline to bind Baylor to the untargeted interpretation asserted by Robinson of the affirmative defense pleaded in the first amended answer.  The Agreement says plainly and unambiguously the circumstances under which Baylor was relieved of its obligation under the contract:  (1) Robinson quit; (2) Robinson did not accept a comparable position; or (3) Robinson was involuntarily terminated for 
any reason 
other than job elimination.  The Agreement does not mention “just cause.”  Accordingly, we conclude that the issue of “just cause” is not implicated by the Agreement.

It is undisputed that Robinson did not quit and was not offered a comparable position, leaving only the possibility that he was terminated for a reason other than job elimination, if Baylor was not required to pay him under the Agreement.  Therefore, we determine that the question before this court is whether Robinson raised more than a scintilla of probative evidence that he was fired for a reason other than job elimination.  A literal reading of “any reason other than job elimination” would encompass Robinson’s alleged reason, Baylor’s desire not to pay his severance package.  Robinson supports this reason by pointing to evidence that he claims establishes that Baylor had no real problem with his performance, and he claims that the proffered reason for his firing—the alleged relationship with his co-worker, Wright—was a pretextual “smoke screen” because Baylor had not terminated any other employees for this reason.  However, McClellon-Allen testified that in addition to terminating Robinson, Baylor terminated Wright and had since terminated one or two other employees due to an inappropriate relationship between co-workers. Furthermore, Baylor had a written policy prohibiting off-the-job conduct, including adultery, that could lead to a disruptive situation in the workplace or discredit Baylor’s name.  Accordingly, having reviewed this and all the evidence as a whole, we conclude that Robinson has not produced more than a scintilla of evidence that raises a genuine issue of material fact with regard to the contractual termination issue.  We overrule Robinson’s first three issues.

V.
  
Fraud and Negligent Misrepresentation

In his fourth and fifth issues, Robinson complains that the trial court erred in granting summary judgment to Baylor because of the existence of “strong” circumstantial evidence of Baylor’s improper motivation for terminating Robinson.  We will construe these issues as attacking the trial court’s grant of summary judgment against Robinson on his fraud and negligent misrepresentation claims.  To prove common law fraud, Robinson must show that a misrepresentation was made with knowledge of its falsity or made recklessly without any knowledge and as a positive assertion.  
Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc
., 962 S.W.2d 507, 524 (Tex. 1998).  To prove negligent misrepresentation, Robinson must show that Baylor made a representation to Robinson in the course of their business in which they had a pecuniary interest, that the representation supplied to Robinson was false, that Baylor failed to exercise reasonable care or confidence in obtaining or communicating the information, and that Robinson justifiably relied on the representation.  
See Federal Land Ass. Bank of Tyler v. Sloane
, 825 S.W.2d 439, 442 (Tex. 1991). 

Robinson argues that circumstantial evidence that Baylor “tricked” him into signing the Agreement, all the while knowing that they intended to fire him or failing to exercise reasonable care in determining that they were going to fire him, should defeat Baylor’s motion for summary judgment.  Robinson argues that this circumstantial evidence consists of the facts that Baylor knew of his relationship with Wright in late 2001; that Baylor put “heat” on Robinson’s supervisor in November 2001 to get Robinson to sign the Agreement; that Baylor told him the involuntary termination provision of the Agreement was “just legal language” but that “the final decision regarding whether or not [Robinson] accepted the benefits under the program or accepted a position with Baylor was totally [Robinson’s] choice”; and that Baylor finance employees became “more adversarial, more uncooperative, more demanding” after Robinson signed the Agreement.

We do not agree that any of these facts constitute evidence that Baylor “tricked” Robinson into signing the Agreement, intentionally or negligently; none of these facts constitute any evidence that Baylor intended to terminate Robinson’s employment before Robinson signed the Agreement.  Robinson’s assertions that these facts establish an inference of wrongdoing by Baylor amount to no more than mere speculation and do not rise to the level of more than a scintilla of evidence.  
See
 
Kindred v. Con/Chem, Inc
., 650 S.W.2d 61, 63 (Tex. 1983) (“When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence.”).  Again, our review of the evidence fails to establish that Robinson has produced more than a scintilla of evidence that raises a genuine issue of material fact with regard to these claims of fraud and negligent misrepresentation.  As such, his fourth and fifth issues are overruled.  

VI.  Evidentiary Rulings

Finally, although not specifically included in Robinson’s initial issues presented, Robinson asserts in his brief that the trial court erred in its evidentiary rulings on certain objections to the summary judgment evidence.  Robinson acknowledges that “the rulings don’t appear to dispositive of Robinson’s legal arguments”; and indeed, reversible error in civil cases requires a showing that the rulings (1) probably caused the rendition of an improper judgment or (2) probably prevented the appellant from properly presenting the case to the court of appeals.  
Tex. R. App. P.
 44.1(a).  There is no demonstration by Robinson of either of the foregoing requirements, so we overrule this complaint as well.

VII.  Conclusion

Having overruled all of Robinson’s issues, we affirm the judgment of the trial court.

BOB MCCOY

JUSTICE

PANEL B: LIVINGSTON, HOLMAN, and MCCOY, JJ.

DELIVERED:  August 25, 2005

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
The manner of disposition of this appeal moots any issues regarding whether Baylor Health Care System, Baylor All Saints Medical Center, or both, were proper parties.